UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LEONARD P. :
:
v. : C.A. No. 19-00418-WES
:
ANDREW M. SAUL, Commissioner :
Social Security Administration :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint August 5, 2019 seeking to reverse the Decision of the Commissioner. On December 13, 2019, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (ECF No. 14). On January 13, 2020, Defendant filed a Motion for an Order Affirming the Decision of the Commissioner. (ECF No. 15).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion to Reverse (ECF No. 14) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 15) be GRANTED.

I.   PROCEDURAL HISTORY

Plaintiff filed applications for DIB (Tr. 228-233) and SSI (Tr. 234-242) on December 18, 2017 alleging disability since March 1, 2015. The applications were denied initially on February

24, 2018 (Tr. 77-91, 92-107) and on reconsideration on March 29, 2018. (Tr. 110-126, 127-143). Plaintiff requested an Administrative Hearing. On October 25, 2018, a hearing was held before Administrative Law Judge V. Paul McGinn (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") and a Medical Expert ("ME") appeared and testified. (Tr. 29-54). The ALJ issued an unfavorable decision to Plaintiff on November 14, 2018. (Tr. 12-28). The Appeals Council denied Plaintiff's request for review on May 1, 2019. (Tr. 1-3). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred at Step 2 in finding that he had no severe mental impairments.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's Step 2 findings are supported by substantial evidence and must be affirmed.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as

well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to

Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

### IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

A.     **Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of HHS, 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of

disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of HHS, 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to

enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.     Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual

functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

>   (1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
>   (2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
>   (3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
>   (4)   Treatment, other than medication, for relief of pain;
>
>   (5)   Functional restrictions; and
>
>   (6)   The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

### A. The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's degenerative disc disease was a "severe" impairment. (Tr. 18). He concluded that none of Plaintiff's mental health conditions were medically determinable impairments based on his evaluation of the opinion testimony of the medical expert, Dr. Baldwin. Id. As to RFC, the ALJ

found Plaintiff capable of performing the full range of light work. (Tr. 20). At Step 4, the ALJ concluded that Plaintiff could not perform past relevant work. (Tr. 22). Finally, at Step 5, the ALJ applied the Grids and concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. 23).

### B. Plaintiff Has Shown No Step 2 Error

Plaintiff argues that the ALJ erred in finding that he had no severe mental impairments. In particular, Plaintiff takes issue with the ALJ's decision to accept the opinion of Dr. Baldwin, the testifying medical expert (Tr. 48-52), and to reject the conflicting opinions of Dr. Gordon (Exh. B2A) and Dr. Hughes (Exh. B6A), the state agency consulting psychologists. The ALJ found Dr. Baldwin's opinion to be "persuasive" and supportive of his finding that Plaintiff had no medically determinable mental impairments. (Tr. 18-19). The ALJ found the conflicting opinions of Dr. Gordon and Dr. Hughes to be "unpersuasive." (Tr. 19).

At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28. Although Step 2 is a de minimis standard, Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)), it is still a standard and a standard on which Plaintiff bears the burden of proof. See Desjardins v. Astrue, No. 09-2-B-W, 2009 WL 3152808 (D.Me. Sept. 28, 2009). In his Step 2 analysis, the ALJ thoroughly discussed Plaintiff's claimed mental impairments in the context of the record as a whole and concluded that there was

insufficient medical evidence presented establishing that Plaintiff suffered any medically determinable mental impairments. (Tr. 18-19).

An ALJ may properly base his Step 2 finding on the absence of medical evidence supporting a finding that a claimant suffers from a "severe medically determinable physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). See also Teves v. Astrue, No. 08-246-B-W, 2009 WL 961231 (D.Me. April 7, 2009) ("[A] claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence."). At Step 2, Plaintiff bore the burden of demonstrating that he had a "medically determinable" physical or mental impairment(s) that significantly limited his ability to do basic work activity at the relevant time. Id. The ALJ found that Plaintiff did not meet that burden as to his mental impairments, and Plaintiff has shown no error in his findings.

The ALJ interpreted Dr. Baldwin's testimony to be that "there [was] not enough data in the record to enable him to offer a behavioral health diagnosis to any degree of medical certainty." (Tr. 18). A review of Dr. Baldwin's testimony (Tr. 48-52) reveals that the ALJ's interpretation is a reasonable one which is supported by the record. When discussing Plaintiff's medical history, Dr. Baldwin testified that he did not see an "up to date that would enable [him] to offer a behavioral health diagnosis." (Tr. 49). He recognized that there was "clear evidence of some post concussive syndrome" which was outside his expertise but that "other than the chemical dependency issue, [he did not] see any diagnosis that would be consistent with a behavioral health listing." Id. In response to Plaintiff's counsel's question about whether there was evidence of a "diagnosable condition" during periods of apparent sobriety, Dr. Baldwin concluded that "frankly, it is not very clear in terms of behavioral health diagnoses." (Tr. 50).

Plaintiff argues that Dr. Baldwin misconstrued some of the records, and that his opinion as to the contents of the March 28, 2018 record was "demonstrably incorrect." (ECF No. 14 at p. 11). Dr. Baldwin testified that those records showed that "at that time [Plaintiff] reports current substance use." (Tr. 52). Plaintiff asserts that Dr. Baldwin was incorrect because his denial of substance use at the time was "borne out by contemporaneous urine tox screens." (ECF No. 14 at p. 14 citing Tr. 877, 951, 953). However, the record shows that Dr. Baldwin's testimony was accurate. Although a toxicology screen performed on March 28, 2018 revealed no illicit substances (Tr. 953-954), Ms. Keeble separately recorded "current" substance use on the same date (Tr. 907), apparently based on Plaintiff's report that he was still using alcohol. (Tr. 908).

The ALJ found Dr. Baldwin's testimony to be persuasive and supportive of a Step 2 finding that Plaintiff had no medically determinable mental impairments. The ALJ thoroughly explained his rationale as follows:

> [Dr. Baldwin] had the opportunity to review the entire record and listen to the claimant's testimony, and his opinion is supported by the medical record. As discussed above, the claimant has engaged in mental health treatment, but he testified that he does not know why he is not able to work. He reported in the record that he does not consistently take[ ] his psychotropic medications, but in June 2018, he reported that he felt great psychiatrically ([Tr. 939]). He has worked at jobs under the table, attended classes at House of Amos, and been independent in his activities of daily living. It is unclear whether the diagnoses in the record were made while the claimant was actively abusing substances which could mimic signs of mental illness.

(Tr. 19).

Plaintiff has shown no error in the ALJ's evaluation of Dr. Baldwin's expert testimony, or his decision to favor that testimony over the opinions of the state agency consulting psychologists. While the consulting psychologists had access to most of the current medical record, Dr. Baldwin provided his opinion several months later and necessarily had access to additional evidence. In

particular, Dr. Baldwin was able to review records showing that Plaintiff's functioning had improved in the absence of substance abuse, including his ability to take classes and participate in an internship. (Exh. B10F). Contrary to the consulting psychologist's earlier findings that Plaintiff had moderate limitations with social functioning and concentration, the later records reviewed by Dr. Baldwin described Plaintiff as pleasant, cooperative and engaging and observed no difficulty concentrating or paying attention. (Tr. 878, 882, 906, 937). The ALJ also discussed the treatment notes of record in detail and explained that the state agency findings were unsupported, in part, because the "[m]ental status exams have generally been within normal limits." (Tr. 19 citing Exhs. B4F and B10F). He also reasonably pointed to inconsistent evidence, such as Plaintiff's report that he was "feeling great psychiatrically," had "completed a seven week course at the Amos House,…planned to do an internship program" and "did not feel [case management] services were needed any longer." (Tr. 19 citing 939-941).

Plaintiff also challenges that absence of a materiality analysis as required under SSR 13-2p. (ECF No. 14 at p. 13). Such an analysis would determine if substance abuse was material, i.e., whether Plaintiff would remain disabled if he stopped abusing drugs and/or alcohol. However, such an analysis was not necessary in these circumstances because the ALJ concluded that Plaintiff did not have any medically determinable mental impairments. (Tr. 18-19). In doing so, the ALJ properly relied upon the testimony of Dr. Baldwin to conclude that there was insufficient evidence in the record as a whole to support a diagnosable behavioral mental health condition. Id.

The bottom line is that the ALJ was faced with conflicting medical opinions and exercised his discretion to resolve that conflict in favor of Dr. Baldwin's expert testimony. The ALJ weighed the evidence and explained his bases for finding Dr. Baldwin's opinion to be more "persuasive." (Tr. 18-19). Ultimately, Plaintiff's challenge to the ALJ's evaluation of the medical opinion

evidence inappropriately asks this Court to re-weigh the record evidence in a manner more favorable to him. See, e.g., Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001) (the ALJ is responsible for weighing the evidence and resolving conflicts in the evidence). "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)). In other words, the issue presented is not whether this Court would have found Plaintiff's mental impairments to be medically determinable at Step 2 but whether the record contains sufficient support for the ALJ's finding. Since Plaintiff has shown no error in the ALJ's evaluation of the medical opinions and other evidence of record, there is no basis for reversal and remand of this disability benefits denial.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF No. 14) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 15) be GRANTED. I further recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, In. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 12, 2020